UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY N. HATTON, | ) |
|                Petitioner, | ) |
| v. | ) No. 1:22-cv-02330-JMS-CSW |
| WARDEN, | ) |
|                Respondent. | ) |

**Order Denying Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Timothy Hatton, an Indiana Department of Correction (IDOC) inmate, seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges prison disciplinary proceeding NCF 22-08-0101, in which he was found guilty of soliciting information from staff. For the reasons explained below, the disciplinary proceeding did not violate Mr. Hatton's due process rights, and his habeas petition is **DENIED.**

    **A.**    **Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B.     The Disciplinary Proceeding**

On August 25, 2022, IDOC Investigator Privett wrote a conduct report charging Mr. Hatton with violation of IDOC Adult Disciplinary Code B-247, possession or solicitation of unauthorized personal information:

> The following conduct report has been issued to offender Timothy Hatton, #231193 based on the investigation from 5/31/2022 through 8/25/2022 for violation of Adult Disciplinary policy B-247. This conduct report is based on information gathered during a confidential case file 2022-NCF-0028. During the course of the investigation it was determined Hatton solicited unauthorized personal information of ex-Mailroom Supervisor Heidi Davidson. NCF-OII received three (3) handwritten letters addressed to Davidson from Hatton. The letters were forwarded to NCF-OII after their content was deemed to be of a personal and romantic nature. The letters were discovered by CO Walda and Sgt. J. Shaw while screening outgoing E-Housing Unit mail on 6/9/2022, 6/28/2022 and 7/3/2022.
>
> In Hatton's letter to Davidson on 6/9/2022 he wrote, 'How do you really feel about me?'
>
> In Hatton's letter to Davidson on 6/28/2022 he wrote, 'A part of me feels like now you're ???? trying to push me away for some reason. You can talk about your concerns and feelings. That's part of why I hope you write back. It's a bit safer then talking, sometimes. I wish I knew how you felt, I guess [sic]. I think it would be cool to meet your Dad and hangout, if that's cool? What does he like to do?'
>
> In Hatton's letter to Davidson on 7/3/2022 he wrote, 'What is your sign and when is your birthday?' Hatton also wrote, 'If you ever need to talk, or if I can help, just let me know!'
>
> By soliciting unauthorized personal information regarding a current staff member, including but not limited to personnel files, offender packets, medical or mental health records, photographs, social security numbers, home addresses, financial information, or telephone numbers, except as authorized by a court order or as approved in writing by the warden, this includes soliciting for correspondence (pen-pals) through forums on any website or periodical, offender Hatton violated code B-247 of the Adult Disciplinary policy. Offender Hatton was told he would receive a conduct report.

Dkt. 11-1 at 1 (cleaned up). A report of investigation, incident reports, and the handwritten letters were attached to the conduct report and are available in the record before the Court. *Id.* The conduct

2

report reflects that a copy of the report was delivered to Mr. Hatton on August 26, 2022, and he appears to have signed the conduct report. *Id.*

Investigator Privett also prepared a report of investigation that detailed that Mr. Hatton's handwritten letters had been intercepted by custody staff during screening of the outgoing mail on Mr. Hatton's housing unit. Dkt. 11-2 at 1-2. "Hatton's letters to Davidson appeared to be romantic in nature. Hatton expressed his feelings to Davidson in the letters, inquired about her feelings towards him and expressed his desire to communicate, either in written form or verbally." *Id.* The Court has reviewed the handwritten letters and finds the conduct report and report of investigation accurately characterize their content.[1] Dkt. 11-3 at 1-9.

The notice of disciplinary hearing screening report indicates that Mr. Hatton was screened on August 26, 2022, at 9:08 a.m., he pled not guilty, requested a lay advocate, did not wish to call any witnesses, would "bring his lawsuit paperwork" as physical evidence, and that he waived his right to 24-hour notice of the hearing. Dkt. 11-7. The screening report does not contain Mr. Hatton's signature, but it includes the initials "TNH" in several places. *Id.* Mr. Hatton attests in his petition, signed under penalty of perjury, that he was not screened, was not allowed to call witnesses or request other evidence, that he did not waive his right to 24-hour notice of the hearing, and that he never received notice of his charge. Dkt. 1 at 2. He attests that he never signed the screening report, and the "screening likely forged [his] signature[.]" *Id.*

---

[1] Letter two has been redacted in part. Dkt. 11-3 at 5-8. Mr. Hatton's letters discuss problems that he and other inmates experienced with the mailroom, but also express his feelings for Ms. Davidson, inquire about her feelings for him, and request her birthdate. Dkt. 11-3 at 1-9 (Mr. Hatton writes: "What is your sign and when is your Birthday? And if it's okay, I kind of already consider you my partner," "I love you so much! And want to make sure you are ok," "You're lucky I love you," "I'd like to get back to the way I was feeling about you! If you don't feel the same, its okay," "How do you really feel about me . . . . Plus, you effect me and I have trouble staying focused").

The record contains the disciplinary hearing board staff COVID-19 response notice for Mr. Hatton's prison disciplinary case NCF 22-08-0101, which was signed by the screening officer on August 26, 2022. Dkt. 11-9. This notice informed Mr. Hatton that due to concerns and precautions related to the pandemic, disciplinary hearing board operations would be delayed. Dkt. 11-9 ("Hearings and Screenings will still continue, but we cannot guarantee they will happen within the seven (7) business day timeline recommended in policy. We are unable to guarantee when the screening and hearing will take place. The form will act as notice of the delay in your screening and hearing process during the COVID-19 emergency situation."). It appears that Mr. Hatton also signed this form, dated August 26, 2022. *Id.*

The record contains a handwritten letter Mr. Hatton wrote to disciplinary chairman T. Thompson, who presided as the disciplinary hearing officer (DHO) over Mr. Hatton's hearing, on August 28, 2022—the day before the hearing. Dkt. 11-12. This letter set forth several arguments Mr. Hatton made related to his charge. *Id.* Mr. Hatton wrote that he had known Ms. Davidson for two years, and that they had developed feelings for each other, but that he never solicited personal information. *Id.* At the time Mr. Hatton wrote this letter, he stated Ms. Davidson was no longer a staff member. *Id.* Mr. Hatton stated that when he "heard of the investigation and issue with [his] casual letters," he stopped sending them, and that he only encountered problems when he made more formal complaints about the mailroom issues. *Id.*

Mr. Hatton was provided with a lay advocate, and his disciplinary hearing was held on August 29, 2022, three days after he signed the conduct report and COVID-19 response notice. *Id.*; dkt. 11-1; dkt. 11-8; dkt. 11-10. The hearing report notes that Mr. Hatton provided a written statement that maintained that he "did not ask [Ms. Davidson] for personal information." *Id.* Mr. Hatton's statement also reflected that he argued that Ms. Davidson was not a current staff

4

member, that the letters were related to correcting issues he had with overcharges for postage and missing legal mail in the mailroom, that Ms. Davidson was a defendant in a lawsuit he had filed, and that while one of his letters was "unprofessional," he never solicited personal information. Dkt. 11-11 (Offender's written comments for NCF 22-08-0101). DHO Thompson considered the conduct report, report of investigation, incident reports, relevant letters, and Mr. Hatton's statement, and found Mr. Hatton guilty of violating Code B-247. Dkt. 11-10. Mr. Hatton's sanctions included a 90-day deprivation of earned credit time and a one-step demotion in credit earning class, among other non-grievous sanctions. *Id.*

Mr. Hatton's first and second level appeals were denied. Dkt. 11-14; dkt. 11-15; dkt. 11-16. He then filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Dkt. 1.

### C.    Analysis

Mr. Hatton raises several grounds and sub-grounds for relief in his petition: (1) he did not waive his right to 24-hour notice of his disciplinary hearing and he never received notice of the disciplinary hearing; (2) he was not allowed to call witnesses or present other evidence; (3) there was insufficient evidence to support his charge and he was not written up within 24-hours after the incident; and (4) he received this conduct report in retaliation for reporting issues he was having with the mailroom. Dkt. 1 at 2-3. For the reasons explained herein, Mr. Hatton's grounds do not entitle him to habeas relief.

#### 1. Notice

Many of Mr. Hatton's arguments challenge the sufficiency of notice he received. A prisoner has a right to notice of the charges against him "in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern*

5

*v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citing *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995)). "The notice requirement permits the accused to gather the relevant facts and prepare a defense." *Id.* at 910.

Mr. Hatton's argument that he did not receive proper screening ahead of his disciplinary hearing is unavailing. "The Due Process Clause does not entitle [petitioner] to a proper 'screening'; it entitles him to advance written notice of the charges sufficient to 'enable him to marshal the facts and prepare a defense.'" *Fisher v. Superintendent*, No. 3:12-CV-183 JD, 2013 WL 351197, at *4 (N.D. Ind. Jan. 28, 2013) (quoting *Wolff*, 418 U.S. at 564).

Though Mr. Hatton contends that his initials on the screening report were forged, he does not dispute that he signed the conduct report or the COVID-19 response notice on August 26, 2022, three days before his hearing. Dkt. 11-1; dkt. 11-9; *see also* dkt. 1 and dkt. 12 (signatures are similar to those on Mr. Hatton's petition and reply). The conduct report explicitly outlined that Mr. Hatton was charged with violating Code B-247, recited the definition of that Code, and outlined the specific letters that were intercepted that formed the basis for the charge. Dkt. 11-1. The record also includes a letter Mr. Hatton wrote to the DHO on August 28, 2022, outlining arguments he wished to make in defense of his charge. Dkt. 11-12. The record indicates that Mr. Hatton had 24-hour notice of the charges before his hearing was held. Mr. Hatton indeed marshaled the facts and prepared his defense ahead of his hearing, and his written statement was considered by the DHO. Dkt. 11-12. Accordingly, Mr. Hatton is not entitled to relief on these grounds.

### 2. Denial of Evidence

Next, Mr. Hatton argues that he was not allowed to call witnesses or present other evidence. Dkt. 1 at 2. He states he requested Ms. Davidson's response to his question: "Have I ever asked for

your phone [number], address, social media accounts, or other personal info?" *Id.* He specifically states in his petition that this request was "[f]or my appeals." *Id.*

Prisoners have a limited right to present witnesses and evidence in their defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A DHO has considerable discretion with respect to requests for evidence and may deny requests that threaten institutional safety or requests that are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process only requires access to witnesses and evidence that are exculpatory. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011). As the petitioner, Mr. Hatton faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). "The denial of the right to present evidence will be considered harmless unless the prisoner can show that the evidence could have aided his defense." *Fisher*, 2013 WL 351197, at *5 (citing *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (applying harmless error analysis to claim that inmate was denied opportunity to call witnesses)).

Mr. Hatton's arguments are unavailing for several reasons. First, he has not identified what witnesses—other than Ms. Davidson—he wished to call at his hearing and has not identified what physical evidence he wished to present. Nor has he explained how those witnesses or evidence were material and exculpatory.

Second, as it relates to witnesses or evidence for his appeals, the Court need not delve deeply into those arguments because there is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief. The Supreme Court made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, not even a right to appeal at all.

Third, to the extent Mr. Hatton argues that he was denied Ms. Davidson's witness statement for his disciplinary hearing, respondent's argument that "[n]o matter what Ms. Davidson would say about the letters, they speak for themselves," is persuasive. Dkt. 11 at 11. Even assuming that Ms. Davidson may have construed the letters differently, her personal characterization of those letters is not exculpatory evidence. Further, the three letters soliciting personal information were confiscated such that Ms. Davidson would not have been aware of their contents. The DHO had the actual letters available for his review, and he based his findings, in part, on reading the content of those letters. The Court also reviewed the letters and finds that they inculpate Mr. Hatton. A prisoner is entitled to habeas relief only if the erroneous denial resulted in prejudice—that is, only if the error had a substantial and injurious effect on the disciplinary proceeding—or habeas relief is not available for harmless error. *See, e.g., Jones*, 637 F.3d at 847-48; *Piggie*, 344 F.3d at 678; *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). Any alleged denial of Ms. Davidson's witness statement, or the alleged denial of other unspecified witnesses or physical evidence, would have been harmless error.

Accordingly, Mr. Hatton is not entitled to habeas relief on this ground.

### 3. Sufficiency of Evidence

Mr. Hatton argues that he is not guilty of the charge because he never asked for a phone number, address, or social media account, and he argues that Ms. Davidson was fired and not a current staff member when he received the conduct report. Dkt. 1 at 2-3.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Nonetheless, in a safeguard against arbitrary revocation of an inmate's good-time credits, a court must "satisfy [itself] that the evidence the board did rely on presented 'sufficient indicia of reliability.'" *Meeks*, 81 F.3d at 720. To challenge the reliability of evidence introduced during a prison disciplinary hearing, there must be "some affirmative indication that a mistake may have been made." *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000). But Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989).

>Code B-247 prohibits an inmate from:
>
>Possessing or **soliciting unauthorized personal information regarding** another offender, ex-offender, victim/witness, potential victim, **or current or former staff person**, **including but not limited to** personnel files, offender packets, medical or mental health records, or photographs, Social Security Numbers, home addresses, financial information, or telephone numbers, except as authorized by a court order or as approved in writing by the Warden. This includes soliciting for correspondence (pen-pals) through forums on any website or periodical.

Dkt. 11-6 (emphasis added).

Mr. Hatton does not dispute he wrote the letters to Ms. Davidson. The conduct report, the investigative reports, and the letters themselves corroborate that Mr. Hatton asked questions of a personal nature about Ms. Davidson's birthday, her astrological sign, her father, and her personal feelings, romantic or otherwise, about Mr. Hatton. *See, e.g., McPherson*, 188 F.3d at 786 (holding that conduct report alone can provide "some evidence" to support the decision). The Code language is broad to encompass both current and former staff members.

To the extent Mr. Hatton argues that his conduct report came too late, in that he was written up more than 24-hours after the incident, "per policy," this argument fails. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy do not form a basis for habeas relief. *See, e.g.*, *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Further, while the Code provides several examples of what kinds of personal information are prohibited from solicitation. The types of personal information listed in the Code is not an

10

exhaustive list and other forms of personal information, such questions about romantic feelings, meeting relatives outside of prison, and birthdays fit within the broad definition of the Code.

The "'some evidence' standard" is "a 'meager threshold.'" *Jones*, 637 F.3d at 849 (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* Mr. Hatton's argument that the investigators or the DHO mischaracterized or misconstrued the letters is merely an invitation to reweigh the evidence, which the Court cannot do.

Accordingly, Mr. Hatton is not entitled to habeas relief on this ground.

### 4. Retaliation

Finally, Mr. Hatton argues that the conduct report is a result of retaliation for his attempts to correct issues with his legal mail and overcharges for postage. Dkt. 1 at 3. In reply, he states the conduct report was in retaliation for his filing of a civil action before this Court in case number 1:22-cv-1417-TWP-MKK.[2] Dkt. 12 at 2.

"Prisoners have a right to be free from retaliation by prison officials, but . . . the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *McPherson*, 188 F.3d at 787; *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). As the Court discussed in the previous sections, Mr. Hatton has not demonstrated that due process violations occurred, nor does he sufficiently argue that any other protections afforded to him under *Wolff* were violated and resulted in more than harmless error. So, "his retaliation claim also fails." *Id.*

---

[2] Ms. Davidson was named as a defendant in this civil action which was dismissed with prejudice when the defendants' motion for summary judgment was granted on May 6, 2024.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Petitioner to the relief he seeks. Accordingly, Mr. Hatton's petition for a writ of habeas corpus must be **DENIED** and the action dismissed.

Mr. Hatton's motion for ruling on petition and motion for Court assistance, dkts. [21] and [22], are **GRANTED to the extent** that the Court has now denied his habeas petition as set forth above. Requests for immediate release raised in his motions, dkts. [21] and [22], are **DENIED**.

The Court takes judicial notice of other filings Mr. Hatton has submitted to this Court in other pending cases that he was recently transferred to Westville Correctional Facility.[3] **The clerk is directed to update** Mr. Hatton's address consistent with the distribution in this Order to show that he is now at Westville.

**The clerk is directed to send** Mr. Hatton a copy of the public docket sheet, along with his copy of this Order.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/27/2024

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[3] Mr. Hatton has notified the Court of his change of address, for example, in case number 1:23-cv-00818-MPB-CSW, dkt. 28 (filed on June 21, 2024).

Distribution:

TIMOTHY N. HATTON
231193
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov